UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS RIBEIRO, on behalf of himself and all others similarly situated<br><br>215 E. 68th Street, Apt. 5ZZ,<br>New York, NY  10021<br><br><br>              Plaintiff,<br><br>v.<br><br>NATIONAL ASSOCIATION OF SECURITIES DEALERS AND EDS CORPORATION<br><br>           Defendants. | Case No. _____<br><br><br>Hon. _____<br><br><br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Thomas Ribeiro ("Ribeiro" or "Plaintiff") brings this action on his own behalf and on behalf of a class of similarly situated persons, against the National Association of Securities Dealers ("NASD") and EDS Corporation ("EDS") (the "Defendants").  For his complaint, Plaintiff alleges upon personal knowledge as to his conduct, and upon information and belief as to all other matters based upon the investigation of counsel completed to date, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of himself and a class (defined in ¶ 11 below) of all other individuals who took the Series 7 broker qualification exam ("Series 7 Exam") administered by the NASD between October 1, 2004 and December 20, 2005 and

incorrectly received a failing grade due to a software error or "glitch" in the automated scoring mechanism.

     2.     According to a January 6, 2006, press release issued by the NASD, approximately 1,882 people nationwide who passed the Series 7 Exam received an incorrect failing grade due to errors in the software used to grade the exam. These incorrect failing grades were then reported by the NASD to securities brokerage firms sponsoring the individuals taking the exam. Plaintiff's incorrect failing grade resulted in harm to him and the members of the Class defined below.

     2.     A spokesperson for the NASD ascribed the software error to Defendant EDS Corporation ("EDS"), which, in accordance with a strategic relationship with the NASD, provides a range of basic technology services to the NASD and its subsidiaries, including software and applications development and maintenance.

     3.     The Series 7 Exam's contents are developed by the New York Stock Exchange ("NYSE"). The NYSE contracts with the NASD to administer the actual test taking. The Series 7 Exam is the exclusive opportunity for individuals to enter the securities field and become registered representatives with the authority to sell securities in the United States. The erroneous Series 7 Exam results harmed Plaintiffs and the Class in several ways, including the loss of compensation and other benefits requiring a securities license.

     4.     This lawsuit seeks to obtain monetary and injunctive relief for the individuals who have been directly harmed by the conduct at issue.

## JURISDICTION AND VENUE

     5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000 and is a class action in

which Plaintiffs and/or members of the proposed Class are citizens of one or more states different from Defendants. Class Action Fairness Act §4, 28 U.S.C. §1332(d)(2)(A) (2005).

6.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because, at all relevant times, Defendant NASD's principal place of business was the District of Columbia.

## THE PARTIES

7.    Plaintiff Thomas Ribeiro took the Series 7 Exam in New York, NY in spring 2005. Upon completion of the exam, he was advised that he had failed the exam. In January 2006, Plaintiff Ribeiro was informed through Maxim Group that he had, in fact, passed his previous exam. In a letter to Maxim Group, the NASD had acknowledged that a computer error had resulted in the mistaken test result for Plaintiff and numerous others."

8.    Defendant NASD is a Delaware Corporation, with its headquarters in the District of Columbia at 1735 K Street, NW, Washington, DC 20006. Directly and through a number of subsidiaries, it is a private sector regulator of the United States securities industry and provider of a range of financial regulatory services. Through an agreement with the NYSE, the NASD provides the technology platform and delivery system for the provision of exams for registered securities representatives, including the entry level Series 7 Exam at issue in this proceeding.

9.    Defendant EDS is a Delaware corporation, with its principal executive offices located n Plano, Texas at 5400 Legacy Drive, Plano, Texas 75024. The company's website, located at www.eds.com, states that more than 40 years ago it founded the information technology outsourcing industry. In an SEC 10K form filed March 24, 2005, EDS indicated that it has over 117,000 employees operating in approximately 60 countries throughout the world. On its website the company describes itself as a "leading technology services company that provides business solutions." The company provides business process outsourcing to clients in

manufacturing, financial services, healthcare, communications, energy, transportation, and consumer and retail industries and to governments all over the world. In the realm of application development, the March 24, 2005, SEC 10K form states: "We create new applications, providing full life cycle support... We define application requirements, analyze application characteristics, implement to a production environment and monitor performance for a warranted time." Since 1998, EDS has had a strategic relationship with the NASD to provide a range of technology services, including the development and maintenance of software used in the delivery and scoring of the Series 7 Exam.

## CLASS ACTION ALLEGATIONS

10.    This action is brought by Plaintiff on his own behalf and pursuant to Fed.R.Civ.P. 23 (b)(3) on behalf of the following class (the "Class"):

> All individuals who, from October 1, 2004 through December 20, 2005, incorrectly received a failing grade on the Series 7 broker qualification exam as a result of a software error in the grading of the exam.

Excluded from the Class are Defendants, their directors, officers, and members of their families.

11.    The Class is so numerous that joinder of all Class members is impracticable.

12.    There are questions of law and fact common to the members of the Class that predominate over any questions affecting individual members, which include:

> a.    Whether the software error reported by the NASD on January 6, 2006, in the scoring of the Series 7 Exam resulted in Plaintiff and the Class receiving a failing grade when, in fact, they had earned a passing grade.

> b.    Whether the same software error reported by the NASD on January 6, 2006, relating to the Series 7 Exam affected the scoring for Plaintiff and the Class.

4

c.   Whether Defendants had a contract with Plaintiff and the Class to accurately and reliably calculate and report their score on the Series 7 Exam.

d.   Whether Plaintiff and the Class were the intended beneficiaries of the agreement between EDS and the NASD.

e.   Whether Defendants breached their contract with Plaintiff and the Class by falsely reporting to them, and their sponsoring firms, that they had failed the Series 7 Exam.

f.   Whether Defendants had a duty to accurately and reliably calculate and report the results of the Series 7 Exam and knew, or should have known, that a software error could impact the accuracy and reliability of the scoring for the Series 7 Exam.

g.   Whether Defendants were negligent in failing to take steps necessary to ensure that the Series 7 Exam would be accurately and reliably scored.

h.   Whether the NASD was negligent in its representations to Plaintiff the Class and their sponsoring brokerage firms (and any other persons) by reporting failing exam scores when Plaintiff and the Class had earned a passing grade.

i.   When Defendants knew that a software error had impacted the accuracy and reliability of the Series 7 Exam administered between October of 2004 and December of 2005.

j.   Whether, as a result of Defendants misconduct, Plaintiff and the Class are entitled to damages, equitable and other relief, and the amount and nature of such relief.

13.   Plaintiff's claims are typical of the claims of the Class.  Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

14.   Plaintiff will fairly and adequately assert and protect the interests of the Class, and have retained attorneys experienced in class and complex litigation.

15.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.   the Class is readily definable;

5

b.    it is economically impractical for members of the Class to prosecute individual actions, because the amount which may be recovered by each individual Class member would be insufficient to support separate actions;

c.    the aggregate amount which may be recovered by individual Class members will be large enough in relation to the expense and effort in administering the action to justify a class action;

d.    Plaintiffs are seeking equitable and final injunctive relief with respect to the Class as a whole; and

e.    prosecution as a class action will eliminate the possibility of repetitious and potentially contradictory litigation.

16.    A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

17.    This class action presents no difficulties in management that would preclude maintenance as a class action. The Class is readily definable and is one for which records of the names and addresses of the members of the Class exist in the files of Defendants.

## SUBSTANTIVE ALLEGATIONS

18.    A person must pass the Series 7 Exam before being permitted to conduct securities business with the public. Passing the test enables a candidate to become a "General Securities Representative" and solicit, purchase and/or sell all securities products, including corporate securities, municipal securities, municipal fund securities, options, direct participation programs, investment company products and variable contracts.

19.    The Series 7 Exam's substance and contents are developed by the NYSE, who contracts with the NASD to administer the actual test taking. The NASD's responsibilities include development of an automated scoring mechanism for the Series 7 Exam. The NASD

6

represents that it will perform these tasks accurately and reliably.  The NYSE describes the exam as follows:

> The Series 7 Examination is the Qualification Examination for General Securities Registered Representatives.  As a qualification examination, it is intended to safeguard the investing public by helping to ensure that registered representatives are competent to perform their jobs.  Given this purpose, the Series 7 Examination seeks to measure accurately and reliably the degree to which each candidate possesses the knowledge, skills and abilities needed to perform the critical functions of a registered representative.

*Content Outline for the General Securities Registered Representative Examination (Test Series 7)*, available at http://www.nyse.com/pdfs/series7.pdf (last accessed March 29, 2006)

20.    The NASD administered Series 7 Exams to 60,500 individuals from October 1, 2004 to December 20, 2005.  The exam includes 250 multiple choice questions, given in two parts of 125 questions for each part.  The total exam encompasses 6 hours (3 hours for each part).

21.    The NASD offers the Series 7 Exam throughout the United States and Canada.

22.    In October of 1998, the NASD and EDS announced a ten-year strategic alliance, with an announced value of $1.5 to $2.0 billion, whereby the NASD (and several of its subsidiaries) agreed to outsource to EDS significant aspects of its technology functions, including software development and maintenance.  This outsourcing included technology and software used in the provision of the Series 7 Exam.

23.    In October 2004, 213 new questions were introduced into the database of questions for the exam.

24.    A news release issued by the NASD on January 6, 2006, acknowledged that a grading error had been discovered in the Series 7 Exam caused by a software "glitch" that improperly weighted the scoring for one or more of the 213 questions introduced in October 2004.

25.    As a result of this error, 1,882 individuals who passed the Series 7 Exam were reported as having failed the exam. The NASD has acknowledged this occurred.

26.    Of these 1,882 individuals, over 1,000 have retaken the exam and passed; 200 have rescheduled to take the exam and as of yet 600 have not rescheduled an exam date.

27.    A spokesperson for the NASD, Nancy Condon, blamed the NASD's information technology provider, EDS, for the software error. The NASD has also noted that the technology platform used to provide the exam to applicants was based on 15-year-old technology that they are seeking to upgrade and replace.

28.    Plaintiff Ribeiro took the Series 7 exam electronically in New York, NY. At the time, he was employed by Maxim Group, LLC.

29.    Prior to taking the exam, Plaintiff signed in at the exam center. He believed that the exam would be accurately and reliably scored, graded and the true results reported to his employer.

30.    Plaintiff was advised that he had failed the Series 7 Exam on the same day he took it. As a result of his seeming "failure" of the exam, Plaintiff suffered monetary injury.

31.    In January 2006, Plaintiff was advised that the failing score he had received in and reported to his employer, Maxim Group, LLC, was the result of a software error and that he had in fact passed the Series 7 Exam.

33.    This information was provided to Plaintiff by letter. In this letter, the NASD explained to Plaintiff that the "NASD has determined that a software error introduced into the automated scoring mechanism for the Series 7 exam affected a limited subset of individuals who sat for the exam between October 2004 and December 2005 ... Your examination result was

among those affected, and you should have received a passing score". The NASD then provided Plaintiff with a corrected score and removed the erroneous information from his CRD record.

## COUNT I

(Breach of Contract against the NASD)

34.    Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

35.    Plaintiff and the Class members entered into a contract with the NASD by submitting applications and fees on their behalf to the NASD in connection with taking the Series 7 Exam.

36.    The contract contained implied provisions that the NASD would correctly and accurately score the Series 7 Exam.

37.    The NASD breached its contract when it incorrectly scored the Series 7 Exam taken by Plaintiff and the Class.

38.    As a result of the NASD's breach, Plaintiff and Class members suffered damages as described herein.

39.    The damages suffered by Plaintiff and Class members were the natural and foreseeable consequences of the NASD's conduct.

## COUNT II

(Breach of Contract against EDS)

40.    Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

41.    EDS had a strategic relationship and agreements with the NASD to provide a wide range of information technology and related services, including software development and

9

maintenance. Part of that agreement included developing and performing the functions relating to the automated scoring function for the Series 7 Exam.

42.    Plaintiff and the Class were the intended third-party beneficiaries of the agreement between the NASD and EDS to perform the automated scoring function for the Series 7 Exam.

43.    EDS, in breach of its agreement to the NASD, failed to accurately and reliably develop and deliver an automated scoring function for the Series 7 Exam.

44.    As a result of EDS's breach, Plaintiff and Class members suffered damages as described herein.

45.    The damages suffered by Plaintiffs and Class members were the natural and foreseeable consequences of EDS's conduct.

## COUNT III

(Negligence by the NASD and EDS)

46.    Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

47.    The NASD and EDS owed Plaintiff and the Class the duty of reasonable care, which they breached.

48.    The NASD and EDS were negligent in performing these duties, rendering the NASD and EDS liable/and or strictly liable, for the following reasons:

    a.    Failing to properly score and scale the Series 7 Exam;

    b.    Failing timely to implement effective audit or quality control procedures under which the Series 7 Exams are scaled and scored on a consistent basis;

    c.      Failing to implement appropriate procedures to prevent errors or inaccuracies;

    d.      Failing to oversee and supervise its employees or independent contractors who had the responsibility to develop and implement software to be used in the scoring and accurate reporting of the Series 7 Exam;

    e.      Failing to immediately notify Plaintiff, the Class, and the sponsoring securities firms of incorrect scoring, or the possibility of incorrect scoring, of the Series 7 Exam;

    f.      Failing to replace or update the software and technology platform used to scale and properly score the Series 7 Exam; and

    g.      Any and all other acts of negligence, recklessness, and omissions to be proven through discovery or at the time of trial of this matter, all of which are in contravention of the duties imposed on the NASD and EDS in favor of Plaintiffs and Class members.

49.    As a result of the NASD and EDS's breach of their legal duties, Plaintiff and Class members suffered damages as described herein;

50.    The damages suffered by Plaintiffs and Class members were all general and special damages arising from the natural and foreseeable consequences of the NASD and EDS's conduct.

## COUNT IV

### (Negligent Misrepresentation against the NASD)

51.    Plaintiff hereby incorporates each of the preceding and subsequent paragraphs as if fully set forth herein.

52.     The NASD owed Plaintiff and the Class the duty to provide them, and their sponsoring securities firm with accurate scores on the Series 7 Exam.

53.     The NASD negligently misrepresented to Plaintiff and the Class (and others) that they had failed the Series 7 Exam when, in fact, they had passed.

54.     The NASD negligently misrepresented to sponsoring securities firms designated by Plaintiff and Class members as exam score recipients, that Plaintiff and the Class members had failed the exams when, in fact, they had passed.

55.     The NASD also negligently misrepresented that it had the procedures in place to ensure its correct scoring of the Series 7 Exams and to ensure that, if scoring errors occur they will be detected promptly and will not reoccur.

56.     The NASD represents to the public and to test takers that scores will be accurately reported.

57.     The NASD breached its duty when it made the above representations and failed to implement or use appropriate procedures to insure the correct scoring and to prevent or detect scoring errors.

58.     The NASD provides scores on the Series 7 Exam for the benefit of Plaintiff and the Class.

59.     Plaintiff and the Class justifiably relied upon the NASD's erroneous scoring of the exam and reasonably believed they had failed the exam when, in fact, they had passed.

60.     The sponsoring securities firms designated by Plaintiff and the Class as score recipients, justifiably relied upon the NASD's erroneous scoring of the Series 7 Exam. These sponsoring securities firms reasonably took action adverse to Plaintiff and the Class as a direct result of learning of the incorrect exam results, including termination.

61.    As a result of the NASD's negligent misrepresentation, Plaintiff and the Class members suffered damages as described herein.

62.    The damages suffered by Plaintiff and the Class were all general and specific damages arising from the natural and foreseeable consequences of the NASD's conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all other individuals similarly situated, prays for judgment as requested above against Defendants and further prays for:

A.    An order certifying this case as a class action and appointing Plaintiff as the lead plaintiff and his counsel as lead counsel pursuant to Fed.R.Civ.P. 23(g);

B.    A determination as to Defendant's liability for damages;

C.    A determination as to declaratory and injunctive relief;

D.    An award of restitution, rescission and damages;

E.    An award of punitive damages where legally appropriate;

F.    An award of prejudgment and post-judgment interest on all damages as allowed by law;

G.    An award from a common fund created, attorneys' fees and the costs of filing and litigating this suit;

H.    An award of such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated: April ____, 2006

                              Respectfully Submitted,


                              By: _____
                              Richard M. Volin (D.C. Bar # 457292)
                              Michael G. McLellan (D.C. Bar # 489217)
                              **FINKELSTEIN, THOMPSON &**
                              **LOUGHRAN**
                              1050 30th St., NW
                              Washington, DC 20007
                              Tel: (202) 337-8000
                              Fax: (202) 337-8090


                              *ATTORNEYS FOR PLAINTIFFS*